IN THE U.S. DISTRICT COURT FOR THE MIDDLE DISTRICT OF
TENNESSEE, NORTHEASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER SULLIVAN, ) <br> NATHAN HASKELL, and ) <br> WILLIAM GENTRY, ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> SAM BENNINGFIELD and ) <br> ODDIE SHOUPE, ) <br> ) <br> *Defendants*. ) | Case No. 2:17-cv-00052 <br><br> Judge Crenshaw |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. Introduction

This is a case about two court orders that expressly condition the length of an inmate's jail sentence upon whether or not the inmate agrees to submit to long-term, surgical sterilization. The Plaintiffs are male White County inmates who were and remain subject to the Defendants' Sterilization Orders. All of them would prefer not to relinquish their right to procreate in order to receive the equal treatment to which they are constitutionally entitled. Accordingly, the Plaintiffs have filed the instant lawsuit seeking both injunctive and declaratory relief terminating the Defendants' ongoing inmate sterilization program.

The instant motion seeks declaratory relief only. Even at this early stage in proceedings, partial summary judgment is proper because *<u>even based on the facts as presented and characterized by the Defendants in their own theory of the case</u>*, the

-1-

Plaintiffs are entitled to judgment as a matter of law. *See* Doc. #18, p. 2 (positing, as the Defendants' theory of the case, that: "[t]he Standing Order was entered on May 15, 2017 and offered a 30-day reduction of any inmate's jail sentence who (1) was serving time under the jurisdiction of the General Sessions Court and (2) voluntarily received either a temporary contraceptive device (for females) or vasectomy (for males) offered by the Tennessee Department of Health."). Specifically, summary declaratory relief is warranted given:

(1) The undisputed existence of the two Sterilization Orders at issue;

(2) The Sterilization Orders' facial discrimination on the basis of an inmate's exercise of a fundamental constitutional right;

(3) The Sterilization Orders' facial gender-based discrimination;

(4) The Sterilization Orders' establishment of a government-sponsored inmate sterilization policy that shocks the judicial conscience, abuses government power, and interferes with the exercise of a fundamental right; and

(5) The Defendants' candid acknowledgement that the Sterilization Orders are still operative and being enforced today.

As such, summary declaratory relief should issue with respect to Plaintiffs' Equal Protection claims (discrimination based on a fundamental right and discrimination based on gender) and Plaintiffs' substantive due process claims (that the Defendants' Sterilization Orders shock the conscience, abuse government power, and interfere with the exercise of a fundamental right). An order declaring Defendants' Sterilization Orders unconstitutional should issue as a result.

## II. Legal Standards

The Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201. 28 U.S.C. §

2201 empowers this Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id.*

Fed. R. Civ. P. 57 provides that "[t]hese rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." *Id.* Fed. R. Civ. P. 56(b) provides that "a party may file a motion for summary judgment **<u>at any time</u>** until 30 days after the close of all discovery."). *Id.* (emphasis added). *See also Georgia Pac., LLC v. Heavy Machines, Inc.*, No. CIV. A. 07-944-JJB, 2010 WL 2026670, at *2 (M.D. La. May 20, 2010) (noting that "under the new rule 56, 'a party may move for summary judgment at any time, even as early as the commencement of the action.'") (quoting Fed. R. Civ. P. 56 advisory committee's notes). Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

### III. Undisputed Material Facts

The facts that govern this motion are undisputed. The Defendants acknowledge that on May 15, 2017, Defendant Benningfield entered the "Standing Order" attached to Plaintiffs' Amended Complaint as Document 13-1, which states:

> For good cause shown including judicial economy and the administration of justice, it is **ORDERED** any White County inmate serving a sentence for the General Sessions Court who satisfactorily completes the State of Tennessee, Department of Health Neonatal Syndrome Education (NAS) Program be given two (2) days credit toward completion of his/her jail sentence. Any such female inmate who receives the free nexplanon implant or any such male inmate who has the free vasectomy as a result thereof shall be given an additional thirty (30) days credit toward completion of his/her jail sentence.[1]

---

[1] *See* Doc. #13-1; Doc. #16, p. 1 ("Judge Benningfield entered a Standing Order that offered a 30-day sentence reduction for any individual sentenced in his court who voluntarily agreed to receive a free vasectomy (for men) or Nexplanon implant (for women)."); Doc. #16, p. 2; Doc. #18, p. 2.

-3-

Thereafter, following a national outcry, the Defendants acknowledge that on July 26, 2017, Defendant Benningfield entered the Supplemental Order attached to Plaintiffs' Amended Complaint as Document 13-2, which states:

> Whereas the State of Tennessee, Department of Health has indicated to the court through its representative that it will no longer offer free vasectomies to White County inmates serving a sentence for the General Sessions Court and will not provide free nexplanon implant to White County inmates serving a sentence for the General Sessions Court who receives any credit toward the completion of their jail sentence as a result thereof; it is hereby **ORDERED** the previous order is [sic] this regard is hereby rescinded.
>
> Those inmates who have demonstrated to the court their desire to improve their situations and take serious and considered steps toward their rehabilitation by having the procedures or agreeing to have same will not be denied the credit. You will be awarded the 30 days jail credit promised whether you ultimately receive the procedures or not. All inmates shall remain eligible for the two (2) days credit for completing the State of Tennessee, Department of Health Neonatal Syndrome Education (NAS) Program satisfactorily.[2]

On their face, the above-described May 15th and July 26th Sterilization Orders subject similarly-situated inmates to sentences that vary in length by 30 days depending solely on whether the inmates agreed to receive a contraceptive implant (for females) or a vasectomy (for males).[3] The Sterilization Orders also facially discriminate based on an inmate's gender, subjecting female inmates to long-term, surgical sterilization (a Nexplanon implant), while subjecting male inmates to potentially *permanent* sterilization (a vasectomy).[4]

---

[2] Doc. #13-2; Doc. #16, p. 2; Doc. #18, p. 2.

[3] Doc. #13-1; Doc. #13-2; Doc. #16, p. 1; Doc. #16, p. 2; Doc. #18, p. 2.

[4] *Id.*

-4-

The Defendants further acknowledge that Defendant Shoupe—the White County Sheriff—and Lieutenant Donna Daniels enforced the May 15, 2017 Order,[5] and that the May 15, 2017 Standing Order is still being enforced today by operation of the July 26, 2017 Supplemental Order.[6] The text of the July 26th Supplemental Order also confirms this reality. Specifically, the July 26, 2017 Order makes clear that regardless of its title, inmates who did not "demonstrate[] to the court their desire to improve their situations and take serious and considered steps toward their rehabilitation by having the procedures or agreeing to have same" will continue to serve jail sentences that are 30 days longer than similarly situated-inmates who did.[7]

## IV. Argument

The Defendants' Sterilization Orders are facially unconstitutional and violate the Fourteenth Amendment's guarantee of Equal Protection because they expressly draw an unconstitutional classification based on an inmate's exercise of his or her fundamental right to procreate. *See* Doc. #13-1; #13-2. The Sterilization Orders also unconstitutionally discriminate on the basis of an inmate's gender. *See id.* As a matter of law, the Defendants' government-sponsored inmate sterilization program also shocks the

---

[5] (Case 2:17-cv-00047, Doc. #8 (Defendants' Answer), p. 2, ¶, 4 ("Defendants also admit that . . . Sheriff Shoupe and Donna Daniels followed the May 15, 2017 Standing Order (the 'Standing Order') issued by Judge Benningfield.").)

[6] Doc. #18, p. 2 (stating that the July 26, 2017 Order "did not renege on the [May 15th] offer of a 30-day reduction in the jail sentence for those individuals that had already received, or had signed up to receive, the family planning services offered by the Tennessee Department of Health."); Doc. #13-2 (indicating that inmates who did not "demonstrate[] to the court their desire to improve their situations and take serious and considered steps toward their rehabilitation by having the procedures or agreeing to have same" will continue to serve jail sentences that are 30 days longer than similarly situated-inmates who did).

[7] *Id.*

conscience, abuses government power, and interferes with the exercise of a fundamental constitutional right.  *Id.*

## A.  Equal Protection

The Defendants do not dispute either the existence or the contents of their Sterilization Orders.  *See* Doc. #18, p. 2.  They also do not dispute that the July 26, 2017 Supplemental Order operates to keep the May 15, 2017 Standing Order in effect by "not reneg[ing]" on the sterilization-for-jailtime offer that the May 15, 2017 Order extended. *Id.*  Further, the unconstitutional classifications drawn by the plain text of each Sterilization Order—both in terms of their discrimination based on a fundamental right and their discrimination based on gender—speak for themselves.  *See* Doc. #13-1; #13-2.

### i.  Defendants' Sterilization Orders discriminate based on inmates' exercise of a fundamental right.

The Plaintiffs' first Equal Protection claim is premised upon their allegation that "[c]ompared with similarly-situated inmates who agreed to be sterilized, Defendant Benningfield's Standing Order provided that inmates who refused to relinquish their reproductive rights would be required to serve 'an additional thirty (30) days" in the White County jail.'"  Doc. #13, p. 1, ¶ 3.  The undisputed text of Defendants' Sterilization Orders makes plain that the Defendants have drawn an unconstitutional classification based solely on White County inmates' refusal to relinquish their fundamental right to procreate.  *Id.*  Under the express terms of both the Defendants' May 15, 2017 Standing Order and their subsequent July 26, 2017 Supplemental Order, the length of identically situated inmates' sentences turns exclusively on whether or not they agree to submit to long-term, surgical sterilization.  *See* Docs. #13-1; #13-2.  Under the express terms of both of the Defendants' Sterilization Orders, inmates who do not submit to surgical

-6-

sterilization must serve a jail sentence that is 30 days longer than those who do.  *Id.*

Thus, on their face, Defendants' Sterilization Orders punish inmates with more severe jail sentences if they exercise their right to procreate.  *See id.*  However, drawing any classification on the basis of a citizen's exercise of a fundamental right presumptively violates the Equal Protection clause.  *See, e.g., Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011) ("The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference."); *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) ("Fundamentally, the Clause protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights. The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers.").  *See also Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005) ("The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference.").

The right to procreate has achieved fundamental status.  *See, e.g., Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972) ("If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child."); *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 851 (1992) ("Our law affords constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education.")

(collecting cases) (internal citations omitted). *See also Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65 (1973) (holding that the Fourteenth Amendment "encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing.").

In the instant case, Defendants' Sterilization Orders indisputably draw a classification based on inmates' exercise of this fundamental right. *See id. Cf. Skinner v. State of Okl. ex rel. Williamson*, 316 U.S. 535, 541 (1942) ("the instant legislation runs afoul of the equal protection clause, though we give Oklahoma that large deference which the rule of the foregoing cases requires. We are dealing here with legislation which involves one of the basic civil rights of man. Marriage and procreation are fundamental to the very existence and survival of the race. The power to sterilize, if exercised, may have subtle, farreaching and devastating effects. In evil or reckless hands it can cause races or types which are inimical to the dominant group to wither and disappear.").

As such, Defendants' sterilization orders are presumptively unconstitutional, and they are subject to strict judicial scrutiny. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973) (holding that if a classification "impinges upon a fundamental right explicitly or implicitly protected by the Constitution," then "strict judicial scrutiny" is required). *Cf. Skinner*, 316 U.S. at 541 ("When the law lays an unequal hand on those who have committed intrinsically the same quality of offense and sterilizes one and not the other, it has made as an invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment."). Because the classifications drawn by Defendants' Sterilization Orders are not narrowly tailored to further any compelling governmental interest, however, they are unconstitutional. *See, e.g., Adarand Constructors, Inc. v. Pena* 515 U.S. 200, 227, (1995) (noting that when classifications are

subject to strict scrutiny, they "are constitutional only if they are narrowly tailored measures that further compelling governmental interests.").

### ii. Defendants' Sterilization Orders discriminate based on an inmate's gender.

The Defendants' Sterilization Orders also facially discriminate on the basis of an inmate's gender. *See* Docs. #13-1; #13-2. Under both Orders, female inmates are subject to long-term sterilization, while male inmates are subject to potentially *permanent* sterilization. *Id.* The burden that follows from this gender-based distinction carries serious practical consequences. *See, e.g., Ariemma v. Perlow*, 223 Ga. App. 360, 362 (1996) (noting that a vasectomy renders the recipient "infertile and incapable of fathering children," and that a patient "should consider it irreversible.").

Gender-based discrimination is subject to intermediate judicial scrutiny. *United States v. Virginia*, 518 U.S. 515, 531 (1996). As such, the Defendants must demonstrate that an "exceedingly persuasive justification" exists to support the orders' constitutionality. *See id.* ("Parties who seek to defend gender-based government action must demonstrate an 'exceedingly persuasive justification' for that action."). In the instant case, no such justification—much less an "exceedingly persuasive" one—exists. *Id.* Accordingly, the Defendants' Sterilization Orders must be declared unconstitutional because they discriminate on the basis of gender as well. *Id.*

### iii. A declaration that a discriminatory policy is unconstitutional is an appropriate Equal Protection remedy.

When a claim of equal protection is raised, the Supreme Court has instructed that "a court may either [1] declare the [policy] a nullity and order that its benefits not extend to the class that the [policy] intended to benefit, or [2] it may extend the coverage of the [policy] to include those who are aggrieved by the exclusion." *Califano v. Westcott*, 443

-9-

U.S. 76, 89 (1979) (alterations omitted). *See also Heckler v. Mathews*, 465 U.S. 728, 740 (1984) ("when the 'right invoked is that of equal treatment,' the appropriate remedy is a mandate of *equal* treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class."). "How equality is accomplished—by extension or invalidation of the unequally distributed benefit or burden, or some other measure—is a matter on which the Constitution is silent." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 426–427 (2010).[8]

For purposes of the instant motion, the Plaintiffs seek only the first remedy: a declaration that the Defendants' Sterilization Orders are unconstitutional. Here, because: (1) the existence and contents of the two Sterilization Orders are undisputed; (2) the Sterilization Orders facially discriminate based on inmates' exercise of a fundamental constitutional right; (3) the Sterilization Orders facially discriminate based on an inmate's gender; and (4) the Defendants candidly acknowledge that the Orders are still being enforced, summary declaratory relief should issue. Accordingly, both of the Defendants' Sterilization Orders and their continued enforcement by Defendant Shoupe should be declared unconstitutional.

## B.  Substantive Due Process

In *United States v. Salerno*, 481 U.S. 739, 746 (1987), the United States Supreme Court reaffirmed that: "'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' *Rochin v. California*, 342 U.S. 165, 172

---

[8] The continuing availability of either remedy to cure an equal protection violation was recently reaffirmed by the United States Supreme Court in its 2017 term. *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1698 (2017) ("There are two remedial alternatives, our decisions instruct, when a statute benefits one class . . . and excludes another from the benefit.") (cleaned up).

-10-

(1952), or interferes with rights 'implicit in the concept of ordered liberty,' *Palko v. Connecticut*, 302 U.S. 319, 325–326 (1937)." Applicable precedent also establishes that substantive due process prohibits the use of oppressive government power. *See Cale v. Johnson*, 861 F.2d 943, 949 (6th Cir. 1988) ("this court has recognized that an 'egregious abuse of governmental power' may be sufficient to state a claim based on the violation of substantive due process.") (citing *Vinson v. Campbell County Fiscal Ct.*, 820 F.2d 194, 201 (6th Cir.1987), *abrogated on other grounds by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)). Defendants' Sterilization Orders violate all of these well-established proscriptions.

i. <u>The Defendants' Sterilization Orders shock the conscience and abuse governmental power.</u>

For well over half a century, the Supreme Court has consistently reaffirmed that claims that governmental actions "shock the conscience" are cognizable under the substantive Due Process clause. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience."). *See also id.* (collecting cases). "While the measure of what is conscience shocking is no calibrated yard stick, it does, as Judge Friendly put it, 'poin[t] the way.'" *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Further, regardless of the procedures involved, certain governmental actions are prohibited categorically because of their capacity to be used for purposes of oppression. *See Daniels v. Williams*, 474 U.S. 327, 331–32 (1986) ("by barring certain government actions regardless of the fairness of the procedures used to implement them, [the Due Process Clause] serves to prevent governmental power from being 'used for purposes of oppression.'") (quoting *Murray's Les v. Hoboken Land & Improvement Co.*,

-11-

15 L.Ed. 372 (1856)). With respect to the Defendants' Sterilization Orders—the contents of which are not disputed—the Plaintiffs respectfully submit that any government-sponsored inmate sterilization program necessarily violates these established due process proscriptions as a matter of law.

In *Skinner v. State of Okl. ex rel. Williamson*, 316 U.S. 535, 541 (1942), the Supreme Court explained that sterilization:

> [I]nvolves one of the basic civil rights of man. Marriage and procreation are fundamental to the very existence and survival of the race. The power to sterilize, if exercised, may have subtle, farreaching and devastating effects. In evil or reckless hands it can cause races or types which are inimical to the dominant group to wither and disappear. There is no redemption for the individual whom the law touches. Any experiment which the State conducts is to his irreparable injury. He is forever deprived of a basic liberty. We mention these matters not to reexamine the scope of the police power of the States. We advert to them merely in emphasis of our view that strict scrutiny of the classification which a State makes in a sterilization law is essential, lest unwittingly or otherwise invidious discriminations are made against groups or types of individuals in violation of the constitutional guaranty of just and equal laws.

*Id.*

Thus, even in 1942, the federal judiciary's conscience had evolved from its prior, ignominious position that "[t]hree generations of imbeciles are enough." *Buck v. Bell*, 274 U.S. 200, 207 (1927). It also goes without saying that historical experience with eugenics programs both during and since the early 1940s has proven the essential conclusion that—as Plaintiffs have insisted—"eugenics is anathema to any conception of morality and represents one of the most disturbing chapters in the dark history of human cruelty." *See* Doc. #13, ¶ 8 (citing mass sterilizations in Nazi Germany and eugenics experimentation in Tuskegee, Alabama).

Defendant Benningfield's inmate sterilization program is an abhorrent, national disgrace, and it has appropriately been derided as a form of eugenics. *See, e.g.,* Kali

-12-

Holloway, *Modern-day eugenics? Prisoners sterilized for shorter sentences*, SALON (Jul. 28, 2017), http://www.salon.com/2017/07/28/modern-day-eugenics-prisoners-sterilized-for-shorter-sentences_partner/; Matthew Walther, *The unspeakable evil of the Tennessee eugenics program*, THE WEEK (Jul. 24, 2017); http://theweek.com/articles/713600/unspeakable-evil-tennessee-eugenics-program; Derek Hawkins, *Judge to inmates: Get sterilized and I'll shave off jail time*, THE WASHINGTON POST (Jul 21, 2017), https://www.washingtonpost.com/news/morning-mix/wp/2017/07/21/judge-to-inmates-get-sterilized-and-ill-shave-off-jail-time/?utm_term=.3e28b727e9fb).  After a horrid, grotesque period of unforgiveable eugenics experimentation and sterilization policy in the United States, the Plaintiffs submit that any modern conception of substantive Due Process compels the conclusion that eugenics is categorically unconstitutional.  For the same reasons, international law has similarly evolved, and it now appropriately declares enforced sterilization to be a crime against humanity.  *See* Rome Statute, Article 7 (1)(g)-5 (defining elements of "Crime against humanity of enforced sterilization").  *See also Morales v. Brown*, No. 114CV01717LJOSAB, 2015 WL 6167451, at *7 (E.D. Cal. Oct. 20, 2015) ("Rape, sexual slavery, enforced prostitution, forced pregnancy, enforced sterilization, or any other form of sexual violence of comparable gravity. . . are universally recognized as impermissible under international law . . . .").  As a result, Defendants' inmate sterilization program should be declared unconstitutional as governmental action that both shocks the conscience and categorically violates the Fourteenth Amendment due to its capacity to be used for purposes of oppression.

ii.  <u>Defendants' Sterilization Orders interfere with the exercise of a fundamental right.</u>

The Defendants' offer of reduced-jailtime-for-sterilization also interferes with

-13-

inmates' fundamental constitutional right to procreational autonomy. Such interference with a fundamental right similarly violates substantive Due Process and triggers strict judicial scrutiny. *See Salerno*, 481 U.S. at 746 ("'[S]ubstantive due process' prevents the government from engaging in conduct that . . . interferes with rights 'implicit in the concept of ordered liberty'") (quoting *Palko*, 302 U.S. at 325–326). *See also Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (observing that substantive Due Process protects, *inter alia*, "a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental.").

As detailed with respect to the Plaintiffs' Equal Protection claim, the right to procreate has long been protected as fundamental. *See, e.g., Eisenstadt*, 405 U.S. at 453; *Casey*, 505 U.S. at 851 (1992) (collecting cases); *Paris Adult Theatre I*, 413 U.S. at 65. There is also little doubt that—as the text of the Defendants' Sterilization Orders themselves makes painfully clear—the Defendants' Sterilization Orders interfere with the exercise of this right. *See* Doc. #13-1; Doc. #13-2. In fact, interfering with inmates' right to procreate is the Orders' <u>only</u> purpose, which the July 26, 2017 Order describes as an indication of inmates' "desire to improve their situations and take serious and considered steps toward their rehabilitation by having the procedures . . . ." *Id.* As such, the Defendants' Sterilization Orders should be declared unconstitutional for interfering with the exercise of the fundamental constitutional right to procreate as well.

## V. Conclusion

For the foregoing reasons, even under the Defendants' own stated theory of this case, the Defendants' Sterilization Orders violate the Equal Protection and Due Process

-14-

clauses of the United States Constitution as a matter of law. Accordingly, the Defendants' May 15, 2017 and July 26, 2017 Sterilization Orders and their continued enforcement by Defendant Shoupe should be declared unconstitutional.

Respectfully submitted,

By: /s/Daniel A. Horwitz
Daniel A. Horwitz, BPR #032176
1803 Broadway, Suite #531
Nashville, TN 37203
daniel.a.horwitz@gmail.com
(615) 739-2888

Richard M. Brooks
130 Third Avenue West
Carthage, TN 37030

*Pro Bono Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2017, a copy of the foregoing was sent via CM/ECF, and to the following parties:

Michael T. Schmitt, BPR #026573
330 Commerce Street, Suite 110
Nashville, TN 37201
mschmitt@ortalekelley.com
615-256-9999

*Counsel for Defendants*

By: /s Daniel A. Horwitz _____